[No. 24458. Department Two. August 3, 1933.]

CORA L. WATSON, *Appellant*, v. HARRY C. JOHNSON, *as Receiver, Respondent.*[1]

[1]Reported in 24 P. (2d) 592.

*Riddell & Brackett* and *Harold Morford,* for appellant.

*Bausman, Oldham, Cohen & Jarvis,* for respondent and cross-appellant.

MAIN, J.—This proceeding involves various claims asserted against the receiver of the Home Savings & Loan Association. After all the claims had been assigned to Cora L. Watson, she petitioned the receiver for their allowance. A hearing was had upon the claims in the superior court, some of which were allowed and some rejected. The petitioner appealed from the order of the superior court in so far as it disallowed the claims, and the receiver appealed from the order wherein two of the claims were allowed.

The Home Savings & Loan Association was a corporation organized and existing under the laws of this state relative to savings and loan associations. July 7, 1931, the state director of efficiency took charge of the affairs of the association and gave its officers twenty days' notice, requiring them to put the affairs of the association in a sound condition, otherwise an application for a receivership would be made. At this time, the approximate capital of the association was $4,500,000, which had been impaired to the extent of over $400,000 by misappropriation of its funds and securities.

A meeting of the shareholders of the association was held September 7, 1931, at which it was resolved that the association proceed to voluntarily liquidate. On the same day, the board of directors of the association successively resigned, and as one resigned another director was elected and qualified. This continued

until an entirely new board was elected. The director of efficiency objected to two of the directors elected, and declined to allow the association to proceed with a voluntary liquidation. He gave another notice to the new board, directing them to put the affairs of the association in a sound condition within twenty days, otherwise a petition for a receivership would be filed.

September 23, 1931, the board of directors employed the law firm of Riddell, Brackett & Fowler to advise and assist them in proceeding with voluntary liquidation, and in the event that the same was refused by the director of efficiency, to defend any action brought looking to a receivership. Thereafter, the director of efficiency, in a proceeding brought for that purpose, and on October 28, 1932, was appointed receiver. The order appointing the receiver was superseded and an appeal taken to this court where, on November 27, 1931, the order of the trial court was affirmed *(In re Home Savings & Loan Ass'n,* 165 Wash. 351, 5 P. (2d) 511).

November 30, 1931, and prior to the time that the remittitur from this court was filed in the superior court, the directors passed a resolution fixing the compensation of the attorneys in the sum of five thousand dollars. After the remittitur was filed in the superior court, and on the same day, the board of directors authorized the attorneys to make an application in the United States district court for the western district of this state, northern division, for an adjudication of voluntary bankruptcy. On the same day that the remittitur was filed in the superior court, an order was entered dissolving the Home Savings & Loan Association. The United States district court denied the application for voluntary liquidation, and an appeal was taken to the United States circuit court of appeals for the ninth circuit. While that appeal was pending and

before it was disposed of, Congress passed, and the President of the United States approved, an act which specifically exempted savings and loan associations from the provisions of the bankruptcy act.

. One of the claims presented by the assignee was that for attorneys' fees in the sum of five thousand dollars, for services rendered the association subsequent to their employment and prior to the time that the remittitur from this court was filed in the superior court approving the order appointing the receiver. One was for $922.42, which had been advanced to the attorneys by various shareholders to defray the costs of resisting the receivership suit. One was for three thousand dollars attorneys' fees in the Federal bankruptcy proceeding, and the other was for the costs of that proceeding.

The trial court fixed the attorneys' fee in the state case at three thousand, five hundred dollars instead of the five thousand dollars claimed. The claim for advancements was allowed in the sum of $661.66. The claims for attorneys' fees and costs in the Federal bankruptcy proceeding were disallowed. The claimant appeals from the order disallowing the attorneys' fees in the sum of five thousand dollars, and also from that part of the order which disallowed attorneys' fees and costs in the Federal court. The receiver appeals from the part of the order allowing attorneys' fees in the state case, and also from the allowance of costs in that case.

The first question is whether the attorneys were entitled to attorneys' fees in resisting the receivership in the state court. They were regularly employed by a board of trustees which had been elected. Whether the board had the power, after the decision of this court affirming the order of the trial court appointing the receiver and prior to the time the

remittitur was filed in the superior court, to make an agreement with the attorneys as to the amount of their compensation which would be binding upon the receiver, we pass without discussion or decision, for the reason that there is another ground upon which we prefer to rest our holding.

Where an application has been made for the appointment of a receiver for a corporation and its dissolution, expenses of attorneys and costs in resisting such application, if made in good faith and upon reasonable grounds, may become a valid claim against the receiver. Whether such attorneys' fees and costs are to be allowed rests in the sound discretion of the court, in view of all the circumstances.

The principle upon which an allowance is made is that counsel fees and costs of the litigation are in the nature of expenses incurred by the corporation and its directors in the protection and preservation of the trust which they represent; and even if it turns out that a case is made for interference by the appointment of a receiver and the dissolution of the corporation, so long as the defense was made in good faith and upon reasonable grounds, there is apparent justice in subjecting the property and the fund involved in the litigation to the expenses incurred in discharging a general duty cast upon the corporation and its directors to take all reasonable means for its protection. *People v. Commercial Alliance Life Insurance Co.*, 148 N. Y. 563, 42 N. E. 1044; *Goodyear Tire & Rubber Co. v. United Motor Car & Supply Co.*, 89 N. J. Eq. 108, 103 Atl. 471; *Wolbrette v. New Orleans Drug Co.*, 149 La. 434, 89 South. 406; *Louque v. Hercules Oil Co.*, 170 La. 355, 127 South. 866.

Applying the rule to the present case, we are of the opinion that the board acted in good faith and upon reasonable grounds in employing attorneys and incur-

ring the expense in resisting the receivership in the state court. In fact, the evidence shows, and the trial court found, that the application and the expenditures made thereunder were in good faith, both upon the part of the directors and the attorneys. The association had a large capital which had been seriously impaired and thousands of shareholders who were anxious that it should be liquidated in the most expeditious and inexpensive manner. The shareholders, at a meeting at which a considerable number were present, expressed a desire for voluntary liquidation. For the services rendered, the attorneys were entitled to reasonable compensation.

There is some contention that, inasmuch as the director of the department of efficiency had taken charge of the books, records and assets of the association, the board of directors, elected one by one as above stated, had no power to act for the association, because it is claimed that a majority thereof did not have the financial interest in the association which was required of directors under Rem. Rev. Stat., § 3719. These directors were at least *de facto* officers, even though they did not have the financial interest in the association required by the statute. They were regularly chosen, took the oath of office, entered upon the discharge of their official duties, and were recognized as directors. *Baggot v. Turner,* 21 Wash. 339, 58 Pac. 212; *Young v. Schenck,* 64 Wash. 90, 116 Pac. 588.

The next question is the amount of the compensation which should be allowed to the attorneys for services in the state case. Charles F. Riddell, of the firm employed, and who did the greater amount of the work, testified in meticulous detail, from a daily work report kept in the office of the firm, as to the time spent, and also as to the character and extent of the services rendered. Two well-known Seattle lawyers

of high standing and extensive practice, after hearing the testimony of Mr. Riddell, testified as to what they thought a reasonable fee for the services would be. One said: "A reasonable minimum fee for that work would be five thousand dollars"; the other, "that the reasonable value of the services performed in the state case would be eight thousand dollars." This is all the evidence upon the question. Taking into consideration the time spent and the character of the services required and rendered, the importance of the litigation and the amount of work involved, we are of the opinion that five thousand dollars was a reasonable fee and should have been allowed in this sum. There is no dispute in the testimony upon this matter, and we draw a different conclusion from the undisputed facts than did the trial court.

As to the expenses incurred in the state case, the claim was for $922.42 and was properly allowed in the sum of $661.66. The trial court found that the latter sum was loaned by the various shareholders in order to finance the defense of the litigation, and this finding accords with the evidence.

This brings us to the question of the attorneys' fees and expenses in the bankruptcy proceeding in the Federal court. Applying the rule above stated and the principle upon which it is based, we think that the court properly refused to allow either the attorneys' fees or the expenses of that litigation. On the day that the petition was filed, the directors were removed by the receiver, and an order entered dissolving the association. The expenses incurred in that litigation cannot come within the principle that such expenses may be incurred by the corporation and its directors in the protection and preservation of the trust which they represent. The trial court did not err in disallowing

the claim for attorneys' fees and expenses incurred in the bankruptcy proceeding.

The order appealed from will be affirmed, except in so far as it fixed the attorneys' fees in the state case at three thousand, five hundred dollars instead of five thousand dollars, and as to that it will be disapproved. The cause will be remanded to the superior court, with direction to allow an attorneys' fee in the state case in the sum of five thousand dollars.

BEALS, C. J., TOLMAN, MITCHELL, and BLAKE, JJ., concur.